[Cite as *State v. Martin*, 2018-Ohio-3505.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 27844 |
| | : | |
| v. | : | Trial Court Case No. 2016-CR-977 |
| | : | |
| MICHAEL J. MARTIN | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 31st day of August, 2018.

. . . . . . . . . .

MATHIAS H. HECK, JR., by ANDREW T. FRENCH, Atty. Reg. No. 0069384, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, 5th Floor, Dayton, Ohio 45402
      Attorney for Plaintiff-Appellee

MICHAEL J. MARTIN, #727-126, P.O. Box 120, Lebanon, Ohio 45036
      Defendant-Appellant, Pro Se

. . . . . . . . . . . .

FROELICH, J.

{¶ 1} Michael J. Martin appeals from a judgment of the Montgomery County Court of Common Pleas, which denied his petition for post-conviction relief without a hearing. For the following reasons, the trial court's judgment will be affirmed.

## I. Background and Procedural History

{¶ 2} Martin's convictions related to the shooting death of Gary Lamar Tisdale, Jr. We set forth the factual circumstances surrounding Martin's convictions in his direct appeal, *State v. Martin*, 2d Dist. Montgomery No. 27220, 2017-Ohio-7431, as follows:

On the evening of March 26, 2016, after spending some time at their aunt's house in Kettering, Gary Lamar Tisdale and his brother, Elbert Soles, set out in Tisdale's Charger to purchase some "weed" from an acquaintance of Tisdale's named "Bama" (Ellis McMillin). However, McMillin did not have what Tisdale and Soles wanted. McMillin got in the car with Tisdale and Soles to find someone from whom they could make a purchase, which they did.

Sometime after 9:00 p.m., when Tisdale, Soles, and McMillin were driving around together, they drove past a car in which Lisa Busbee was sitting. Busbee and Tisdale had been in a romantic relationship in the past, and the car in which she sat was parked in front of a house at which Busbee was staying. Busbee was sitting in the passenger's seat of the parked car, and Martin was in the driver's seat. After passing the car and recognizing Busbee, Tisdale did a U-turn and pulled up alongside the car in which Busbee was seated. The cars were then facing in the same direction.

Tisdale got out of his car and approached Busbee, walking around the back end of the vehicles. According to the testimony of Soles, McMillin, and Busbee, Tisdale was in a "happy" mood, was not behaving in a threatening or aggressive manner, and did not have a gun. These witnesses also testified that Tisdale's car was not parked so closely to Martin's as to prevent Martin from exiting. Tisdale spoke with Martin and/or Busbee through the sun roof of the car, which was open, while standing on the curb; the windows were closed.

According to Soles, Tisdale said to Martin, "You can't stay away from my girl." According to McMillin, Tisdale asked Busbee why she was "calling him over there if she's in the car with someone else." According to Busbee, Martin already had a gun in his lap when Tisdale approached the car and spoke to him. Similarly, Soles testified that he did not see Martin reach for a gun after they pulled alongside the car.

Without warning, Martin pointed his gun at Tisdale through the sun roof and fired. Tisdale was shot in the chest, but he managed to return to his car and to pull away in the car with Soles and McMillin. It was not immediately clear to Soles (who was in the front passenger seat) whether Tisdale was hit, but Soles saw a "flash from behind" and yelled "he's chasing us." Tisdale "hit the gas," but almost immediately started driving erratically and lost control of the car. Soles told Tisdale to stop the car as it approached a busy intersection, but Tisdale did not respond. Soles tried to control the vehicle, without success. A few blocks from Busbee's

residence, the vehicle crashed into a tree across the street from a fire station, and the airbags deployed.

Soles jumped out of the car, ran to the driver's side, partially pulled his brother from the car, and checked for breathing. Soles testified that Tisdale was still breathing but could not talk. Firefighters quickly responded from across the street; they detected no pulse but started CPR. Having observed no signs of life, the fire department did not transport Tisdale to a hospital.

*Martin* at ¶ 11-16.

**{¶ 3}** At trial, Martin testified on his own behalf, asserting that he had shot Tisdale in self-defense and in defense of Busbee. Martin stated that the Charger parked alongside Martin's car, within 12 to 18 inches of the driver's door, such that Martin could not exit his vehicle. Martin saw the driver of the Charger (Tisdale) exit the Charger and walk around the back of the two vehicles. Martin testified that he saw a firearm in the man's hand in the driver's side mirror as the man walked behind the cars; he saw the firearm again when the man reached the passenger's side of his (Martin's) car, and the man (Tisdale) opened the door about a quarter of an inch. According to Martin, Busbee was "looking around * * * anxiously," trying to lock the door, and "screaming and hollering 'he's going to kill me.' " Martin also testified that he heard Tisdale say the words "b***h" and "kill." Martin testified that, after the shooting, he did not follow Tisdale's car, but he did pull forward to a stop sign and, as he tried to turn right with the firearm still in his hand, the gun had accidentally discharged. (A second bullet, fired from inside the car, had gone through the passenger side of the windshield of Martin's car.)

**{¶ 4}** In July 2016, Martin was found guilty by a jury of two counts of murder, two counts of felonious assault, and discharging a firearm at or near a prohibited premises, along with a firearm specification and a specification for discharging a firearm from a motor vehicle for each of these counts, and of improper handling of a firearm. The jury found Martin not guilty of two additional counts of felonious assault related to Soles and McMillin. The trial court, after a bench trial, found Martin guilty of having weapons while under disability. After the merger of several charges and specifications, the trial court sentenced Martin to an aggregate term of 30 years to life in prison. Martin was ordered to pay restitution of $7,870.93 and court costs.

**{¶ 5}** Martin appealed from his convictions, claiming that (1) his convictions were against the manifest weight of the evidence, (2) the jury instructions were incomplete, inaccurate and misleading with respect to the "castle doctrine" and the duty to retreat before acting in self-defense, and (3) his trial counsel rendered ineffective assistance during the cross-examination of Busbee and his (Martin's) direct examination and in counsel's handling of the jury instructions and of certain testimony about someone who allegedly fled from the scene of the shooting. We overruled Martin's assignments of error and affirmed his convictions.[1] *Martin*, 2d Dist. Montgomery No. 27220, 2017-Ohio-7431.

**{¶ 6}** On October 19, 2017, approximately seven weeks after his direct appeal was decided, Martin filed a petition for post-conviction relief. Martin asserted that his trial counsel provided ineffective assistance by failing to impeach Busbee and Soles with their

---

[1] Martin filed an application to reopen his direct appeal. We denied that application on January 25, 2018.

prior statements made during police interviews; Martin cited several specific statements that Busbee and Soles allegedly made to the police that differed from their testimony at trial. Martin further alleged that his trial counsel had acted deficiently by failing to clarify that Martin was referring to the father of Busbee's youngest child, not to Tisdale, in voicemails left on Busbee's phone on the day of the shooting. Finally, Martin claims that the prosecutors engaged in misconduct by failing to "correct" Busbee's and Soles's testimony at trial.

{¶ 7} Martin did not provide any evidentiary materials to support his claims. Martin attached an affidavit to his petition which stated that he had asked his appellate counsel for a copy of the trial transcript and had asked his trial counsel for copies of the statements Busbee and Soles made to the police, but neither attorney had provided the requested materials.

{¶ 8} On December 8, 2017, the trial court overruled Martin's petition. Martin appeals from the trial court's judgment. His assignments of error claim that he was denied the effective assistance of counsel and that the prosecutor engaged in misconduct at trial.

## II. Petition for Post-Conviction Relief

{¶ 9} Petitions for post-conviction relief are governed by R.C. 2953.21 through R.C. 2953.23. Under these statutes, any defendant who has been convicted of a criminal offense and who claims to have experienced a denial or infringement of his or her constitutional rights (federal or Ohio) may petition the trial court to vacate or set aside the judgment and sentence. R.C. 2953.21(A). A post-conviction proceeding is not an appeal of a criminal conviction; it is a collateral civil attack on the judgment. *State v.*

*Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, ¶ 48, citing *State v. Steffen*, 70 Ohio St.3d 399, 410, 639 N.E.2d 67 (1994); R.C. 2953.21(K). For this reason, a defendant's petition for post-conviction relief is not a constitutional right; the only rights afforded to a defendant in post-conviction proceedings are those specifically granted by the legislature. *Steffen* at 410.

{¶ 10} R.C. 2953.21(D) provides that, before granting a hearing on a petition for post-conviction relief, the trial court shall determine whether there are substantive grounds for relief. A petitioner in a post-conviction relief proceeding bears the initial burden of submitting evidentiary documents with sufficient facts to demonstrate a constitutional deprivation, such as ineffective assistance of counsel, that would merit a hearing. *State v. Jackson*, 64 Ohio St.2d 107, 111, 413 N.E.2d 819 (1980), syllabus. Broad conclusory allegations are insufficient, as a matter of law, to require a hearing. *Id.* A petition for post-conviction relief may be properly denied without a hearing where the petition, its supporting evidence, and the record "do not demonstrate that petitioner set forth sufficient operative facts to establish substantive grounds for relief." *State v. Calhoun*, 86 Ohio St.3d 279, 714 N.E.2d 905 (1999), paragraph two of the syllabus.

{¶ 11} We review the trial court's denial of a petition for post-conviction relief for an abuse of discretion. *Gondor* at ¶ 52. An abuse of discretion implies an arbitrary, unreasonable, or unconscionable attitude on the part of the trial court. *State v. Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, 840 N.E.2d 1032, ¶ 130.

{¶ 12} At the outset, the State asserts that Martin's claims of ineffective assistance of counsel and prosecutorial misconduct are barred by res judicata. "Res judicata" means that a final decision has previously been made; it serves to preclude a party who

had his or her day in court from seeking a second hearing on the same issue. *State v. Saxon*, 109 Ohio St.3d 176, 2006-Ohio-1245, 846 N.E.2d 824, ¶ 18. The State notes that Martin's second assignment of error in his direct appeal claimed that he was denied the effective assistance of counsel during Busbee's cross-examination and during his own direct examination. We overruled that assignment of error, finding no support in the record that additional questioning of Busbee or Martin would have affected the outcome of the case. *Martin,* 2d Dist. Montgomery No. 27220, 2017-Ohio-7431, at ¶ 48-49.

{¶ 13} However, when a claim of ineffective assistance of counsel relies on evidence outside of the record, the matter is not properly raised on direct appeal. *E.g., State v. White*, 2d Dist. Montgomery No. 27749, 2018-Ohio-3076; *State v. Harris*, 2d Dist. Montgomery No. 27179, 2017-Ohio-9052, ¶ 19. Here, Martin ostensibly relies on prior statements made by Busbee and Soles to the police; those statements were not part of the record on direct appeal. Accordingly, res judicata did not bar Martin from raising his claims in a post-conviction petition.

{¶ 14} First, Martin's petition for post-conviction relief asserted claims of ineffective assistance of counsel. To establish ineffective assistance of counsel, a defendant must demonstrate both that trial counsel's conduct fell below an objective standard of reasonableness and that the errors were serious enough to create a reasonable probability that, but for the errors, the outcome of the case would have been different. *See Strickland v. Washington*, 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 142, 538 N.E.2d 373 (1989).

{¶ 15} Trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. *Strickland* at 688. A defendant is

entitled to "reasonable competence" from his or her attorney, not "perfect advocacy." *See Maryland v. Kulbicki*, 136 S.Ct. 2, 5 (2015), citing *Yarborough v. Gentry*, 540 U.S. 1, 8, 124 S.Ct. 1, 157 L.Ed.2d 1 (2003) (per curiam). Hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time, and a debatable decision concerning trial strategy cannot form the basis of a finding of ineffective assistance of counsel. *State v. Cook*, 65 Ohio St.3d 516, 524-525, 605 N.E.2d 70 (1992); *State v. Fields*, 2017-Ohio-400, 84 N.E.3d 193, ¶ 38 (2d Dist.).

{¶ 16} In his petition, Martin asserted that Busbee should have been cross-examined about discrepancies in her statements regarding (1) the nature of her tattoo, (2) whether Tisdale had a cell phone in his hand when he approached Martin's vehicle, (3) the location of Tisdale's hands as he approached the car, (4) whether Tisdale spoke to Martin upon reaching Martin's car, and (5) the position of Tisdale's hands at the car. On appeal, Martin adds that Busbee had previously told the police that she had locked the car's doors. Martin further asserted in his petition that Soles made inconsistent statements about how the shooting occurred, including whether Tisdale spoke to Martin before the shooting.

{¶ 17} Although Martin references prior statements by Busbee and Soles, Martin has provided no evidentiary materials to support his claims of ineffective assistance of counsel. Martin enumerates six specific statements that Busbee allegedly made to the police and three specific statements that Soles allegedly made to the police, but he does not provide any evidentiary materials, such as police reports or video recordings, to substantiate those statements. Even accepting that those materials were not available to Martin, Martin does not identify the source of his information regarding the statements

that Busbee and Soles allegedly made to the police.   In the absence of any evidentiary support, we have no basis to determine whether trial counsel should have cross-examined Busbee and Soles differently and whether additional questioning would have created a reasonable probability of a different outcome at trial.   Martin's allegations that Busbee and Soles made prior inconsistent statements to the police are insufficient to warrant a hearing on his petition for post-conviction relief.

{¶ 18} Moreover, several of the discrepancies that Martin raises (for example, the nature of Busbee's tattoo), even if true, are not relevant to the primary issue in his case, namely whether he acted in defense of himself and Busbee when he shot Tisdale.   And, with respect to some statements (such as Busbee's statement to the jury that she heard Tisdale say "You're still trying to f*** my b***h"), Busbee's and Soles's trial testimony was more favorable to Martin than their prior alleged statements to the police, in that they supported Martin's assertion that he (Martin) heard threatening statements by Tisdale. Defense counsel would not have rendered ineffective assistance by failing to cross-examine Busbee and Soles with prior statements that undermined or weakened Martin's affirmative defense.

{¶ 19} In his appellate brief, Martin states that he would agree that his trial counsel's failure to impeach Busbee and Soles was a strategic decision if he had raised self-defense at trial, but Martin asserts that his defense was based on the castle doctrine, not self-defense.   Martin argues that the trial court incorrectly stated, in denying his petition, that he (Martin) had raised self-defense at trial.

{¶ 20} As we explained in his direct appeal, the castle doctrine relates to one component of self-defense, the affirmative defense on which the jury was instructed.

The castle doctrine "sets forth circumstances in which [a defendant] is not required to retreat, which relates to only one of the elements of self-defense. In other words, the castle doctrine creates a rebuttable presumption in his favor on this one element of self-defense. On the other elements — that the defendant did not create the situation that gave rise to his use of force, and that he had reasonable grounds to believe, and an honest belief, that such force as he used was necessary to protect himself — the defendant still bears the burden of proof." *Martin*, 2d Dist. Montgomery No. 27220, 2017-Ohio-7431, at ¶ 41. The trial court correctly stated that Martin had raised self-defense at trial.

{¶ 21} Martin further claims that his trial counsel should have clarified whom Martin was talking about in his voicemails on Busbee's telephone. Martin also states that defense counsel's failure to delve into more detail about Martin's relationship with Busbee "allowed the prosecution to paint a picture of Martin * * * that was far from the truth."

{¶ 22} Martin has presented no evidence that counsel's questioning about his relationship with Busbee and the voicemails he left on her phone was not reasonable trial strategy. Even accepting Martin's assertion that he was referring to someone other than Tisdale in his voicemails, the jury could have reasonably concluded that Martin was angry about Busbee's relationship with another man. Martin has not demonstrated that a reasonable probability exists that trial counsel's failure to ask Martin additional questions about the voicemails or Martin's relationship with Busbee affected the outcome of the trial.

{¶ 23} Finally, Martin asserts the prosecutors had engaged in misconduct by failing to "correct" Busbee's and Soles's testimony at trial. As with his claims of ineffective assistance of counsel, Martin has provided no evidentiary support for this assertion. We

find nothing to suggest that Busbee and Soles knowingly provided false testimony at trial or that the prosecutor allowed the State's witnesses to present perjured testimony.

**{¶ 24}** The trial court did not abuse its discretion in denying Martin's petition for post-conviction relief without a hearing.   Martin's assignments of error are overruled.

### III. Conclusion

**{¶ 25}** The trial court's judgment will be affirmed.

. . . . . . . . . . . . .

DONOVAN, J. and TUCKER, J., concur.

Copies mailed to:

Mathias H. Heck
Andrew T. French
Michael J. Martin
Hon. Michael W. Krumholtz