**[Cite as *State v. King*, 2021-Ohio-4228.]**

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**CHAMPAIGN COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2021-CA-18 |
| | : | |
| v. | : | Trial Court Case No. 21-CRB-25 |
| | : | |
| ROBERT KING | : | (Criminal Appeal from Municipal Court) |
| | : | |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 3rd day of December, 2021.

. . . . . . . . . . .

MARK M. FEINSTEIN, Atty. Reg. No. 0065183, Prosecuting Attorney, Champaign County Municipal Court, 205 South Main Street, Urbana, Ohio 43078
    Attorney for Plaintiff-Appellee

BYRON K. SHAW, Atty. Reg. No. 0073124, 4800 Belmont Place, Huber Heights, Ohio 45424
    Attorney for Defendant-Appellant

. . . . . . . . . . . . .

DONOVAN, J.

{¶ 1} Robert King appeals from his conviction in the Champaign County Municipal Court, following a bench trial, on one count of domestic violence in violation of R.C. 2929.25, a misdemeanor of the first degree. We affirm the judgment of the municipal court.

{¶ 2} King was charged by way of complaint on January 8, 2021. He filed a motion to dismiss on March 1, 2021, which the court did not address. A bench trial commenced on March 31, 2021.

{¶ 3} At trial, the complaining witness, J.C., testified that she and King had two children together and had been in a relationship "off and on" for 20 years. She further testified that, on Friday, January 8, 2021, King was "messing around in his pockets" and she "heard" the sound of pills in his pocket. King also wanted J.C. to leave their son with King and his brother, who was also present. J.C. had not wanted to leave her "baby boy" with King and his brother because of "the pill incident." J.C. asserted that King had told her in the past that he "gets different surgeries to get prescription medication"; defense counsel objected to this testimony, arguing that the presence of the pills may or may not be relevant, but that J.C.'s testimony about how King got them was irrelevant and speculative. The court overruled the objection.

{¶ 4} J.C. further testified that she had looked in the trash can in the kitchen and seen "some papers," that she knew King did not usually "throw papers away," and that she stated to him: "you went and got your prescriptions today." According to J.C., King responded affirmatively. J.C. then "went to go through" the papers, saw "another one," and started to grab it. At that point, King had come around the kitchen table and "gripped

[J.C.] up by [her] throat," which she also described as grabbing her by the neck. King then let J.C. go, and she left with her kids. According to J.C., King's actions left marks on her neck; she spoke to law enforcement officers after the incident, and the officers took pictures of the marks.

{¶ 5} J.C. testified that, while she was speaking with law enforcement officers after this incident, King telephoned her, and his call was recorded. The recording was played for the court. With respect to her injury, J.C. testified that King "scratched" the left side of her neck and "it kept burning."

{¶ 6} Todd Pratt, the supervisor for the Urbana Police Division, testified that he investigated J.C.'s complaint about the incident on January 8. He stated that J.C.'s trial testimony had been consistent with her version of events on the evening of the incident. Pratt stated that he had recorded King's call to J.C. and had been present when three photos were taken of J.C.'s throat. Pratt identified Exhibits A, B, and C as the pictures of J.C.'s neck. Pratt testified that Exhibit A included a ruler to establish the size of the injury, and Exhibit B showed the left side of J.C.'s neck, which had a scratch mark. Pratt described Exhibit C as depicting the right side of J.C.'s neck, where she had a birthmark, and Pratt testified that he "just [saw] the birthmark" on that picture.

{¶ 7} On cross-examination, Pratt testified that King had stated that he grabbed J.C. by her shirt, not her throat; King "did tell that story that she was digging in the trash and he didn't like it; and he had grabbed her by the shirt to get her out the door[.]" Pratt acknowledged that King wore a neck brace. The following exchange occurred during Pratt's cross-examination:

      Q. Do you know generally * * * why he's wearing that [neck brace]?

A.   We had discussion about that too, because * * * instead of taking him to jail that evening, which is normal protocol, he said that he had surgery and something about they went in and through his throat or through his neck or something - - he had some neck surgery, and some vertebrae I think are so bad so yeah, he explained why he was medically having an issue.

Q.   * * * And this medical issue, the results of the surgery were so serious, I guess, that the jail wouldn't even take him, correct?

A. That's correct.

Q.   Did you investigate whether it would even be possible for him to grab her by the neck?

A.   He was supposed to be wearing a back brace, he said, but he wasn't wearing it that day so I don't know about his movements or what he's able or not to do.   I didn't get into the medical aspect of his - - I mean, he was able to walk around and everything and - -

Q. Okay.

A. - - (unintelligible) in front of me, but we didn't go any further than that.

{¶ 8} Pratt testified that he had had prior interactions with King and J.C. and had charged them with disorderly conduct in 2016.   Regarding the instant offense, Pratt was not the initial responding officer; he arrived 15-20 minutes later at J.C.'s parents' home, then proceeded to King's residence.   When asked if he found any evidence of drug trafficking there, Pratt responded that that was "not what was going on," that King had "an explanation of what was going on with the pills, and they were at his mother's."

{¶ 9} On redirect examination, Pratt testified that nothing he witnessed in King's movements on the night of the incident suggested to him that King would have been unable to injure J.C. in the manner described by her.

{¶ 10} At the conclusion of the evidence, King moved for an acquittal; the court overruled the motion. The defense did not call any witnesses. After closing arguments, the trial court found King guilty of domestic violence in violation of R.C. 2919.25(A), which states that "no person shall knowingly cause or attempt to cause physical harm to a family or household member." Specifically, the court found that the photographs established an injury to the victim, with two possible explanations: "one is an intentional grabbing by the throat and choking by the throat, and the other one is grabbing a collar that would've led to a scratch on the victim." Either way, there was an injury, and in the court's opinion, "it was knowingly caused by the Defendant here so the Court finds the Defendant guilty in this matter." King was sentenced to 30 days in jail, which were suspended, and to a 12-month term of probation. The court ordered King to complete an anger management program, to complete a chemical dependency assessment, and to have no contact with the victim.

{¶ 11} King appeals, raising two assignments of error. His first assignment of error states:

THE CONVICTION AND SENTENCING OF APPELLANT ROBERT KING SHOULD BE OVERTURNED DUE TO THE INEFFECTIVE ASSISTANCE OF COUNSEL.

{¶ 12} King asserts that his attorney "knew that a major part of his defense was his medical injury to his neck and/or back that possibly prevented him from grabbing anybody

by the throat area as claimed" by J.C., but defense counsel did not called any defense witnesses, including any medical personnel, to validate the claimed surgery and injuries and to support King's "critical line of defense." King asserts that evidence from medical personnel "could have easily and solely won the case for the defense."

{¶ 13} In *State v. Martin*, 2d Dist. Montgomery No. 27844, 2018-Ohio-3505, we stated:

* * * To establish ineffective assistance of counsel, a defendant must demonstrate both that trial counsel's conduct fell below an objective standard of reasonableness and that the errors were serious enough to create a reasonable probability that, but for the errors, the outcome of the case would have been different. *See Strickland v. Washington*, 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 142, 538 N.E.2d 373 (1989).

Trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. *Strickland* at 688. A defendant is entitled to "reasonable competence" from his or her attorney, not "perfect advocacy." *See Maryland v. Kulbicki*, 136 S.Ct. 2, 5 (2015), citing *Yarborough v. Gentry*, 540 U.S. 1, 8, 124 S.Ct. 1, 157 L.Ed.2d 1 (2003) (per curiam). Hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time, and a debatable decision concerning trial strategy cannot form the basis of a finding of ineffective assistance of counsel. *State v. Cook*, 65 Ohio St.3d 516, 524-525, 605 N.E.2d 70 (1992); *State v. Fields*, 2017-Ohio-400, 84

N.E.3d 193, ¶ 38 (2d Dist.).

*Id.* at ¶ 14-15.

{¶ 14} We have also stated that "the failure to call an expert and instead rely on cross-examination does not constitute ineffective assistance of counsel." *State v. Nicholas*, 66 Ohio St.3d 431, 436, 613 N.E.2d 225 (1993), citing *State v. Thompson,* 33 Ohio St.3d 1, 10-11, 514 N.E.2d 407 (1987).

{¶ 15} We conclude that ineffective assistance of counsel is not demonstrated here. As noted above, King merely asserts that defense counsel knew his injury "*possibly* prevented him from grabbing anybody by the throat area." However, Pratt testified that King was "able to walk around and everything" and that, while he "was supposed to be wearing a back brace, * * * he wasn't wearing it that day." Pratt also testified that nothing about King's movements suggested that he would not have been able to injure J.C. in the manner described by her. We conclude that King's argument is both speculative and meritless. In other words, we cannot conclude that defense counsel's failure to call an expert witnesses to testify regarding King's injury fell below an objective standard of reasonableness and that the error was serious enough to create a reasonable probability that, but for the error, King would not have been convicted.

{¶ 16} King's first assignment of error is overruled.

{¶ 17} King's second assignment of error states:

THE TRIAL COURT ERRED IN ALLOWING INTO EVIDENCE PRIOR BAD ACTS EVIDENCE WITHOUT EXCEPTION THAT PREJUDICED THE BENCH OF APPELLANT'S POSSIBLE POSSESSION OF ILLEAL PRESCRIPTION DRUGS IN VIOLATING HIS

CONSTITUTIONAL RIGHTS REGARDING SELF-INCRIMINATION.

**{¶ 18}** King directs our attention to Evid.R. 404 and R.C. 2945.59. He asserts that, although he never testified, the State used J.C.'s testimony to introduce King's own statements as negative character evidence that he had possibly obtained prescription pills "using schemes and/or false pretenses." He argues that this character evidence was extremely prejudicial and that "the bench [was] unfairly influenced by this inadmissible character evidence" before he had a chance to introduce evidence about his medical injury, which denied him a fair trial. He asserts that a mistrial should have been granted or "at the least an admonishment should have been stated on the record by the Court."

**{¶ 19}** In response, the State points out that King did not present any testimony at trial, so "his rights against self-incrimination would not have been directly invoked." According to the State, even if the trial court erred in admitting evidence of prior bad acts impugning King's character, that evidence was not evidence of prior acts of violence, which might have inclined the court to believe he acted violently during this incident. The State also argues that, because King did not testify, "there is no credibility issue here."

**{¶ 20}** We have held that:

"[T]he admission of evidence lies within the broad discretion of the trial court, and a reviewing court should not disturb evidentiary decisions in the absence of an abuse of discretion that has created material prejudice. Thus, our inquiry is confined to determining whether the trial court acted unreasonably, arbitrarily, or unconscionably in deciding the evidentiary issues * * *." (Citations omitted.) *State v. Conway*, 109 Ohio St.3d 412,

2006-Ohio-2815, 848 N.E.2d 810, ¶ 62.

*State v. Turney*, 2020-Ohio-4148, 157 N.E.3d 809, ¶ 32 (2d Dist.).

{¶ 21} Evid.R. 404(B) states:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. In criminal cases, the proponent of evidence to be offered under this rule shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

{¶ 22} R.C. 2945.59, which governs proof of a defendant's motive, provides:

In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant.

{¶ 23} Significantly, "the law presumes that in a bench trial the court considers only relevant, material, and competent evidence." *State v. Bays*, 87 Ohio St.3d 15, 27, 716 N.E.2d 1126 (1999), citing *State v. Post*, 32 Ohio St.3d 380, 384, 513 N.E.2d 754

(1987). Even if we were to conclude that J.C.'s statement that King "goes and gets different surgeries to get prescription medication" should not have been admitted, we must presume that the municipal court considered only competent evidence addressed to the domestic violence offense, and the record does not suggest that the court did otherwise. We note that Officer Pratt testified that he had observed no evidence of drug trafficking and that King "had an explanation of what was going on with the pills." The court viewed the photos reflecting J.C.'s injury, found that there was an injury, and found that the injury had been knowingly caused by King. The evidence supported this conclusion.

{¶ 24} King's second assignment of error is overruled.

{¶ 25} The judgment of the trial court is affirmed.

. . . . . . . . . . . . .

TUCKER, P.J. and EPLEY, J., concur.


Copies sent to:

Mark M. Feinstein
Byron K. Shaw
Hon. Gil S. Weithman