[Cite as *State v. Merrick*, 2020-Ohio-3744.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
GREENE COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2019-CA-29 |
| | : | |
| v. | : | Trial Court Case No. 2017-CR-56 |
| | : | |
| | : | (Criminal Appeal from |
| DUSTIN MERRICK | : | Common Pleas Court) |
| | : | |
| Defendant-Appellant | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 17th day of July, 2020.

. . . . . . . . . . .

MARCY A .VONDERWELL, Atty. Reg. No. 0078311, Greene County Prosecutor's Office, Appellate Division, 61 Greene Street, Suite 200, Xenia, OH 45385
     Attorney for Plaintiff-Appellee

WILLIAM CASS, JR., Atty. Reg. No. 0034517, 135 West Dorothy Lane, Suite 117, Dayton, Ohio 45429
     Attorney for Defendant-Appellant

. . . . . . . . . . . . .

FROELICH, J.

**{¶ 1}** Dustin Merrick pled guilty in the Greene County Court of Common Pleas to two counts of aggravated murder with firearm specifications, two counts of murder, two counts of aggravated burglary, and one count each of felonious assault, tampering with evidence, and obstructing justice. The plea also addressed, among other things, the merger of allied offenses, the forfeiture of certain firearms, an agreed prison sentence, and the waiver of court costs. After merging allied offenses as agreed, the trial court imposed the agreed aggregate sentence of life without parole plus six years; the judgment of conviction waived court costs. The court separately ordered the forfeiture of firearms that were seized. We note that the trial court also filed a separate entry imposing court costs, although the judgment of conviction itself stated that costs were waived.

**{¶ 2}** For the following reasons, the trial court's judgment of conviction will be affirmed. The trial court's separate order imposing court costs will be vacated.

## I. *Anders* Appeal Standard

**{¶ 3}** Merrick's appellate counsel has filed a brief pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). We informed Merrick that his attorney had filed an *Anders* brief on his behalf and granted him 60 days from that date to file a pro se brief. Merrick has filed a pro se brief, raising nine issues for review.

**{¶ 4}** Pursuant to *Anders*, we must determine, "after a full examination of all the proceedings," whether the appeal is "wholly frivolous." *Id.* at 744; *Penson v. Ohio*, 488 U.S. 75, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988). An issue is not frivolous merely because the prosecution can be expected to present a strong argument in reply. *State v. Pullen*, 2d Dist. Montgomery No. 19232, 2002-Ohio-6788, ¶ 4. Rather, a frivolous appeal is one

that presents issues lacking arguable merit, which means that, "on the facts and law involved, no responsible contention can be made that it offers a basis for reversal." *State v. Marbury*, 2d Dist. Montgomery No. 19226, 2003-Ohio-3242, ¶ 8, citing *Pullen* at ¶ 4. If we find that any issue — whether presented by appellate counsel, presented by the appellant, or found through an independent analysis — is not wholly frivolous, we must appoint different appellate counsel to represent the appellant. *Id.* at ¶ 7.

## II. Factual and Procedural History

{¶ 5} On January 15, 2017, law enforcement officers were dispatched to a two-level building with two apartments on a report of a dead body. Upon arrival, officers found Sherri Mendenhall face down in the driveway and her neighbor, William "Skip" Brown, in the bedroom of his apartment; both had died from gunshot wounds. Two spent 9 mm casings, a live 9 mm round, a live .40 caliber round, and birdshot pellets were located in Brown's bedroom. Officers also located a spent 9 mm casing on the roof of the carport, a spent .40 caliber round in the kitchen of Brown's apartment, and a spent shotgun shell in the hallway of Brown's apartment.

{¶ 6} Within a few days, investigators identified Merrick, Brown's step-nephew and a former employee of Brown's roofing company, as a suspect. Friends and family of Brown told detectives that Merrick had been fired by Brown and that Merrick believed that Brown owed him money.

{¶ 7} Detective Kelly Edwards of the Greene County Sheriff's Office and Ohio Bureau of Criminal Investigation (BCI) Special Agent David Hornyak spoke with Merrick at his home on January 20, at which time Merrick indicated that he owned a Chinese birdshot gun, a .22 caliber rifle, and a Taurus 9 mm pistol. Merrick allowed the officers

to look at his guns. Hornyak noticed that the 9 mm firearm had only nine bullets, rather than a full 13 (12 in the magazine and one in the chamber), and that the cartridges were of the same manufacturer as those at the crime scene. Edwards noticed that Merrick's physical appearance was similar to a person seen on surveillance video at the apartment building. The officers took the Chinese birdshot gun and a DNA sample from Merrick with Merrick's consent and the 9 mm firearm without his consent.

{¶ 8} On January 24, BCI analysts determined that Merrick's 9 mm firearm matched the three spent 9 mm casings found at the murder scene and that Merrick was a major contributor to the mixed DNA profile found on the live 9 mm round at the scene. Later that day, Captain David Tidd of the Greene County Sheriff's Office charged Merrick by complaint with two counts of aggravated murder. Merrick was arrested the same day. Merrick's brother, Bret, confessed to participating in the crime and was also charged.

{¶ 9} Merrick requested a probable cause hearing in the Xenia Municipal Court. After the hearing, the municipal court concluded that probable cause existed that Merrick committed both aggravated murders, and it bound the case over to the Greene County Court of Common Pleas. On February 24, 2017, Merrick signed a speedy trial waiver, which was filed on February 28.

{¶ 10} On March 30, 2017, Merrick was indicted on two counts of aggravated murder (Counts 1: Brown & 2: Mendenhall), two counts of murder (Counts 3: Brown & 4: Mendenhall), two counts of aggravated burglary (Counts 5: Brown's apartment & 6: Mendenhall's apartment), and one count each of felonious assault (Count 7: Brown), tampering with evidence (Count 8), and obstructing justice (Count 9). Counts 1 through 7 each included a firearm specification. Both aggravated murder charges also included

specifications that the murders were part of a course of conduct involving the killing of two or more persons, and that Merrick was the principal offender and committed the offense while committing aggravated burglary. Count 2 included a fourth specification that the aggravated murder was committed for the purposes of escaping detection, apprehension, trial, or punishment for another offense committed by the offender. As a result of additional specifications to Counts 1 and 2, Merrick faced the death penalty for the aggravated murders.

{¶ 11} On April 7, 2017, the Ohio Supreme Court appointed two death penalty qualified attorneys for Merrick. The same day, Merrick signed a speedy trial waiver for the period between April 7, 2017 and November 30, 2017. During the month of April, Merrick filed a demand for discovery, motion to extend time for filing pretrial motions, motion for funds for a consulting mitigation expert, and motion to suppress evidence of the 9 mm pistol seized from his home. The trial court conducted a hearing on Merrick's motion to suppress on July 13, following which the parties filed post-hearing memoranda.

{¶ 12} On August 11, 2017, Merrick filed 11 additional motions with the trial court: (1) a motion for appropriation of funds for a consulting defense psychologist, (2) a motion to permit Merrick to appear in civilian clothing and without restraints at all proceedings, (3) a motion to restrain certain parties from discussing the case with Merrick, (4) two motions for relief from payment of fees related to the issuance of defense subpoenas, (5) a motion for a courtroom decorum order, (6) a motion for a change of venue, (7) a motion in limine to exclude prejudicial photographs of the deceased, (8) a motion in limine to prohibit the prejudicial display of tangible things or photographs, (9) a motion for appropriation of funds for a consulting defense DNA expert, and (10) a motion to dismiss

capital components due to a violation of constitutional and international law.

{¶ 13} On September 27, the court held a pretrial conference, during which Merrick was present. The parties and court agreed to a trial date of January 11, 2018, and defense counsel acknowledged that the speedy trial time remained tolled until that date. Two days later, the trial court overruled the motion to suppress.

{¶ 14} The same day (September 29), Merrick filed 19 new motions. Several motions addressed the jury selection process and other trial procedures. Others were motions in limine asking to limit the State from making certain comments or arguments and from presenting certain evidence at trial.

{¶ 15} The trial court conducted several conferences with the parties in October, November and December 2017. At the December 20 conference, Merrick requested a continuance of the trial date in order to obtain a ballistics expert. The court granted the motion, and Merrick agreed that his speedy trial time remained tolled during the pendency of the continuance. At a March 12, 2018 status conference, Merrick's counsel informed the court that a ballistics expert had been retained and that a report was forthcoming. As of the May 15, 2018 status conference, the defense expert ballistic report had not yet been provided to the State.

{¶ 16} At a June 26, 2018 status conference, the court scheduled the jury trial for September 4, 2018. The court's entry memorializing the conference discussed the jury selection process, indicated that the State's ballistic expert was preparing a report in response to the defense expert's report, and stated that the court had "engaged in a meaningful dialogue with [Merrick], who confirmed he is satisfied with his counsel and is able to assist in his defense."

{¶ 17} In July 2018, Merrick filed a motion for a reporting recognizance bond with electronic monitoring, which the trial court denied. On July 9, Merrick moved for a hearing on the scope of admissible evidence regarding firearm identification. The court scheduled a hearing for August 14.

{¶ 18} In all, the trial court held nearly two dozen status conferences and addressed numerous defense motions throughout the pendency of Merrick's case.

{¶ 19} Jury selection began on September 4, as scheduled. However, on September 12, 2018, Merrick pled guilty to the charged offenses and to the firearm specifications in Counts 1 and 2; the State dismissed the remaining specifications. The parties agreed that the felonious assault (Count 7) and murder (Count 3) charges regarding Brown merged with the aggravated murder charge in Count 1, that the murder charge regarding Mendenhall (Count 4) merged with the aggravated murder charge in Count 2, and that the remaining charges were not allied offenses of similar import. The plea agreement included jointly recommended sentences for each of the offenses and agreements regarding the forfeiture of the firearms seized by the State and the waiver of fines, restitution, and court costs. The parties also agreed, among other terms, that Merrick was waiving his right to appeal his sentences pursuant to R.C. 2953.08(D).

{¶ 20} The trial court immediately proceeded to sentencing, where it imposed the jointly recommended sentences of life in prison without parole for both aggravated murder counts, 11 years for both aggravated burglary counts, 36 months for tampering with evidence, and 36 months for obstructing justice; all sentences were to be served concurrently. The court further imposed three years each for the firearm specifications in Counts 1 and 2, to be served consecutively to each other and prior to the sentences

for the offenses. Merrick's aggregate sentence was life without parole plus six years. Consistent with the plea agreement, the trial court also ordered the forfeiture of Merrick's two firearms and ammunition, that Merrick pay no fines or restitution, and that the costs of prosecution be waived.

{¶ 21} The same day as the plea and sentencing hearing, the trial court filed a written "judgment entry (sentencing)" addressing the prison terms, post-release control, fines, restitution, and court costs, consistent with its oral pronouncements. The court filed a separate judgment of forfeiture regarding the firearms and ammunition. Although the court's sentencing judgment entry indicated that "[a]ll costs of prosecution and proceedings are waived," the court also filed a separate entry rendering judgment for costs in an amount "to be determined." The clerk of courts filed a statement of costs, and the prosecutor certified that the statement of costs was accurate. The record reflects that a cost bill was sent to CRC on September 19, 2018.

{¶ 22} On January 7, 2019, Merrick, pro se, filed a motion to withdraw his guilty pleas based on ineffective assistance of counsel and coercion in taking his pleas. He filed a second similar motion the following month. On March 15, 2019, the trial court overruled his motions without a hearing, finding that his claims were not supported by the record and that no manifest injustice was shown.

{¶ 23} On May 28, 2019, Merrick filed a notice of appeal, stating that he was appealing from a May 9, 2019 judgment. After the State filed a motion to dismiss for want of jurisdiction, we ordered Merrick to clarify the judgment from which he was appealing. We noted that the last arguably appealable order was issued on March 15, 2019 and that the court entered its judgment of conviction on September 12, 2018.

Merrick notified the court that he was appealing his September 12, 2018 judgment of conviction, and we have allowed this appeal to proceed.

### III. Pretrial Matters

{¶ 24} A plea of guilty is a complete admission of guilt. *State v. Faulkner*, 2d Dist. Champaign No. 2013-CA-43, 2015-Ohio-2059, ¶ 9; *State v. Wheeler*, 2d Dist. Montgomery No. 24112, 2011-Ohio-3423, ¶ 3; Crim.R. 11(B)(1). Consequently, a guilty plea generally waives all appealable errors that may have occurred in the trial court, unless such errors precluded the defendant from knowingly, intelligently, and voluntarily entering his or her guilty plea. *See, e.g., State v. Kelley*, 57 Ohio St.3d 127, 566 N.E.2d 658 (1991), paragraph two of the syllabus; *Wheeler* at ¶ 3. In his pro se brief, Merrick raises several issues based on events that occurred prior to entering his guilty plea.

{¶ 25} First, Merrick claims that his attorneys forced him to sign waivers of his speedy trial rights. The record reflects that Merrick signed speedy trial waivers on February 24, 2017, and April 7, 2017. However, the conversations between Merrick and his attorneys regarding the speedy trial waivers are not in the record. Even assuming, for sake of argument, that the waivers of his speedy trial rights affected Merrick's decision to enter a guilty plea, his claim relies on matters outside of the record and, consequently, is not properly raised on direct appeal. *See, e.g., State v. Williams*, 2d Dist. Montgomery No. 27919, 2019-Ohio-4105, ¶ 40, fn. 14.

{¶ 26} In addition, the record does not support a claim that Merrick's speedy trial rights were violated. The right to a speedy trial is guaranteed by the Sixth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution. In Ohio, R.C. 2945.71 requires the State to bring a felony defendant to trial within 270 days

of arrest. R.C. 2945.71(C). Each day during which the accused is held in jail in lieu of bail on the pending charge is counted as three pursuant to the triple-count provision of R.C. 2945.71(E). This "triple-count" provision reduces to 90 days the time for bringing to trial an accused who is incarcerated the entire time preceding trial. *State v. Dankworth*, 172 Ohio App.3d 159, 2007-Ohio-2588, 873 N.E.2d 902, ¶ 31 (2d Dist.).

{¶ 27} Pursuant to R.C. 2945.71(H), the time within which an accused must be brought to trial is extended by "[t]he period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion."

{¶ 28} R.C. 2945.73(B) states that, "[u]pon motion made at or prior to the commencement of trial, a person charged with an offense shall be discharged if he is not brought to trial within the time required by sections 2945.71 and 2945.72 of the Revised Code."   A defendant's failure to raise a speedy trial violation in the trial court at or prior to trial precludes the defendant from raising that issue on appeal.   *State v. Wilson*, 2d Dist. Clark No. 2018-CA-2, 2020-Ohio-2962, ¶ 22.   Merrick did not, at any point, ask the trial court to dismiss the indictment based on a speedy trial violation.   Moreover, despite Merrick's lengthy pretrial incarceration, the record reflects that Merrick's plea hearing occurred within the statutory speedy trial time, taking into account Merrick's written speedy trial waivers, his counsels' agreement at pretrial conferences that the speedy trial time was tolled, and his filing of numerous motions.

{¶ 29} Merrick's second potential assignment of error claims that he was forced to file a motion for a continuance, because the State failed to provide complete discovery regarding BCI's ballistic testing in a timely manner.   His seventh claim further states that

he "was continuously pressed into filing extensions/continuances." There is no suggestion in the record that the continuances affected Merrick's ability to enter a knowing, intelligent, and voluntary plea. Accordingly, Merrick's guilty plea waives these arguments on direct appeal.

{¶ 30} Third, Merrick claims that the State's DNA test consumed the DNA sample from the bullet casing, precluding Merrick from hiring an independent expert to test the DNA. Merrick's guilty plea waived this issue for appeal. Even assuming it did not, Merrick did not raise this issue in the trial court, and thus the issue has been waived except for plain error.

{¶ 31} Regardless, "[t]he consumptive testing of evidence violates a defendant's due process rights only when the evidence possesses an exculpatory value that was apparent before the evidence was destroyed." *State v. Rios*, 2d Dist. Clark No. 10CA0099, 2012-Ohio-3289, ¶ 23; citing *California v. Trombetta*, 467 U.S. 479, 488-489, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984). Here, the BCI testing occurred prior to Merrick's arrest and formed part of the basis for his arrest. We find nothing in the record from which the trial court could have found that the DNA evidence had any exculpatory value that was evident prior to BCI's testing.

{¶ 32} Fourth, Merrick claims that the trial court erred in denying his motion to suppress. He states that he clearly told Special Agent Hornyak that he (Hornyak) could not take the Taurus 9 mm pistol, and he argues that Hornyak's seizure of the gun thus violated his (Merrick's) Fourth Amendment rights. Because Merrick's guilty plea constituted a complete admission of guilt, his guilty plea waived any error in the trial court's ruling on his motion to suppress. *State v. Smith*, 2d Dist. Montgomery No. 26746,

2016-Ohio-3361, ¶ 24; *State v. Lyons,* 2d Dist. Greene No. 2019-CA-26, 2020-Ohio-823, ¶ 32.

{¶ 33} Fifth, Merrick claims that his attorneys failed to file motions that they promised to file. We infer that Merrick is asserting that his attorneys' failure to file those motions constituted ineffective assistance.

{¶ 34} As stated above, Merrick's private conversations with his attorneys are not in the record, and the record does not reflect what motions his attorneys allegedly promised to file but did not. A claim of ineffective assistance of counsel cannot be raised on direct appeal if it relies on evidence outside the record. *State v. Easterling*, 2019-Ohio-2470, 139 N.E.3d 497, ¶ 27 (2d Dist.). Assuming that Merrick's guilty plea did not waive this issue for appeal, Merrick's claim based on his counsels' failure to file motions as promised is not properly before us. Reviewing the record before us, there is nothing to suggest that defense counsel acted deficiently by failing to file appropriate motions.

{¶ 35} Sixth, Merrick claims that he was not present for all pretrial proceedings. A criminal defendant has a right pursuant to the Fourteenth Amendment to be present at every "critical stage" of his trial. *State v. Campbell*, 90 Ohio St.3d 320, 346, 738 N.E.2d 1178 (2000), citing *Snyder v. Massachusetts*, 291 U.S. 97, 54 S.Ct. 330, 78 L.Ed. 674 (1934); *State v. Al-Mosawi*, 2d Dist. Montgomery No. 24633, 2012-Ohio-3385, ¶ 19, citing *State v. Hale*, 119 Ohio St.3d 118, 2008-Ohio-3426, 892 N.E.2d 864, ¶ 100. Crim.R. 43(A)(1) also provides that a defendant "must be physically present at every stage of the criminal proceeding and trial," including "the imposition of sentence," except as the Criminal Rules otherwise provide.

{¶ 36} "An accused's absence, however, does not necessarily result in prejudicial

or constitutional error." *State v. Davis*, 116 Ohio St.3d 404, 2008-Ohio-2, 880 N.E.2d 31, ¶ 90. "[T]he presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his [or her] absence, and to that extent only." *Id.*, quoting *Snyder v. Massachusetts*, 291 U.S. 97, 107-108, 54 S.Ct. 330, 78 L.Ed. 674 (1934), *overruled on other grounds*, *Duncan v. Louisiana*, 391 U.S. 145, 154, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968); *State v. Hare*, 2018-Ohio-765, 108 N.E.3d 172 (2d Dist.). Moreover, "[c]ounsel is permitted to waive the client's right to be present." *State v. Beasley*, 153 Ohio St.3d 497, 2018-Ohio-493, 108 N.E.3d 1028.

**{¶ 37}** Merrick did not identify which specific proceedings he did not attend, and the record reflects that the court held numerous hearings while his case was pending. However, the transcript of the November 21, 2017 pretrial conference, for example, indicated that the court and counsel held a lengthy in-chambers conference that was then memorialized in open court with Merrick present.

**{¶ 38}** At the June 26, 2018 status conference, Merrick asked the court about his absence from in-chambers discussions that preceded on-the-record discussions in open court. Merrick stated:

> * * * There seems to be a lot of conferences in judge's chambers, and today it happened to be in the jury chambers, and from my understanding, as you've said that I'm supposed to be here for all court proceedings required in my case, but there seems to be a lot of activity happening in closed chambers with me in the building but not present. I'm misunderstand – I'm just at a misunderstanding of why and how that is. Shouldn't I be present for all proceedings throughout my case and – so I can have an

understanding of what everything is – everyone is talking about and what is happening?

The court responded that all of the in-chambers discussion was "nonsubstantive." The court explained:

* * * None of it was talking about evidence, none of it was talking about the merits of the case, none of it was talking about the trial itself. It was simply calenderizing, calendarizing how to proceed, the manner in which to proceed.

Henceforth, we can certainly make you – we can do it in open court. I don't have any problem with doing that. Again, though, you – all it is, is just calendaring.

The court provided an example of a substantive discussion – the use of videotaped testimony – for which Merrick would be present, but the court reiterated that it would have all conversations in Merrick's presence in the future.

{¶ 39} The trial court held telephone conferences with counsel on July 13, 2018, August 3, 2018, and August 9, 2018, all of which concerned the jury selection process; there is no indication that Merrick was present for any of those conferences. The transcript of the August 30, 2018 conference reflects that the court and counsel met in chambers and then, with Merrick present, reiterated what the parties had agreed to regarding trial procedures.

{¶ 40} The record thus reflects that the court and counsel had several discussions without Merrick present. Nevertheless, based on the record, there is nothing to suggest that Merrick's absence was prejudicial. Significantly, we find nothing in the record to

indicate that Merrick's absence from any pretrial conference affected his ability to make a knowing, intelligent, and voluntary plea on September 12, 2018. Accordingly, Merrick's guilty plea waived this issue for appeal.

{¶ 41} Upon review of the record, we find no non-frivolous issues related to the events prior to Merrick's guilty plea.

### IV. Crim.R. 11 Plea Hearing

{¶ 42} "An appellate court must determine whether the record affirmatively demonstrates that a defendant's plea was knowing, intelligent, and voluntary[.]" *State v. Russell*, 2d Dist. Montgomery No. 25132, 2012-Ohio-6051, ¶ 7, citing *Boykin v. Alabama*, 395 U.S. 238, 243, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). If a defendant's plea is not knowing, intelligent, and voluntary, it "has been obtained in violation of due process and is void." *Id.*

{¶ 43} "In order for a plea to be given knowingly and voluntarily, the trial court must follow the mandates of Crim.R. 11(C)." *State v. Brown*, 2d Dist. Montgomery Nos. 24520, 24705, 2012-Ohio-199, ¶ 13. The Supreme Court of Ohio has urged trial courts to comply literally with Crim.R. 11. *State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, ¶ 29. However, in reviewing the plea colloquy, the focus should be on whether "the dialogue between the court and the defendant demonstrates that the defendant understood the consequences of his plea." *State v. Dangler*, Ohio Slip Opinion No. 2020-Ohio-2765, __ N.E.3d __, ¶ 12.

{¶ 44} Crim.R. 11(C)(2) requires a trial court to address the defendant personally and (a) determine that the defendant is making the plea voluntarily, with an understanding of the nature of the charges and the maximum penalty, and, if applicable, that the

defendant is not eligible for probation or for the imposition of community control sanctions; (b) inform the defendant of and determine that the defendant understands the effect of the plea of guilty and that the court, upon acceptance of the plea, may proceed with judgment and sentencing; and (c) inform the defendant and determine that he or she understands that, by entering the plea, the defendant is waiving the rights to a jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses, and to require the State to prove guilt beyond a reasonable doubt at a trial at which he or she cannot be compelled to testify against himself or herself. *State v. Brown*, 2d Dist. Montgomery No. 21896, 2007-Ohio-6675, ¶ 3.

{¶ 45} In general, a defendant is not entitled to have his or her plea vacated unless the defendant demonstrates he or she was prejudiced by a failure of the trial court to comply with the provisions of Crim.R. 11(C). *Dangler* at ¶ 16, citing *State v. Nero*, 56 Ohio St.3d 106, 108, 564 N.E.2d 474 (1990). The test for prejudice is "whether the plea would have otherwise been made." *Id.*

{¶ 46} This general rule is subject to two exceptions. *Dangler* at ¶ 16. First, the trial court must comply strictly with Crim.R. 11(C)(2)(c), as it pertains to the waiver of federal constitutional rights. *Clark* at ¶ 31; *Dangler* at ¶ 14. "When a trial court fails to explain the constitutional rights that a defendant waives by pleading guilty or no contest, we presume that the plea was entered involuntarily and unknowingly, and no showing of prejudice is required." *Dangler* at ¶ 14.

{¶ 47} Second, "a trial court's complete failure to comply with a portion of Crim.R. 11(C) eliminates the defendant's burden to show prejudice." *Id.* at ¶ 15, citing *State v. Sarkozy,* 117 Ohio St.3d 86, 2008-Ohio-509, 881 N.E.2d 1224, ¶ 22. *See also State v.*

*Bishop*, 156 Ohio St.3d 156, 2018-Ohio-5132, 124 N.E.3d 766, ¶ 11 (a defendant must show prejudice if the trial court partially complied with Crim.R. 11(C) in regard to a nonconstitutional right, but no showing of prejudice is required if the trial court completely failed to comply).

{¶ 48} At the beginning of the plea hearing, the trial court told Merrick that it would be asking him a series of questions and that the "critical thing today is that you understand what I'm asking and you give accurate answers to what I'm asking." The court emphasized that, before accepting Merrick's plea, it would "have to be convinced that you're entering your pleas of guilty of your own free will, knowingly, intelligently, and voluntarily and I have to be convinced the record reflects that."

{¶ 49} Upon questioning, Merrick stated that he was 27 years old, was a United States citizen, could read, write, and understand English, had not consumed alcohol or drugs within 24 hours, had not been diagnosed with a mental illness, and was able to understand the proceedings. Merrick stated that he had not been threatened or coerced to enter a plea, had not been promised anything "beyond the terms of our agreements here," and was entering a plea of his free will. Merrick indicated that he had talked with his attorneys about the case and possible defenses and was completely satisfied with their representation.

{¶ 50} Merrick told the trial court that he had reviewed and understood the plea forms, and he signed the documents in court; Merrick orally acknowledged his signature. The court read the eight-page plea agreement nearly verbatim, which included, among several other provisions, the maximum possible sentence for each offense to which Merrick was pleading and the recommended sentence agreed upon by the parties.

Merrick indicated that he had heard what the court had read, had understood it, and planned to follow through with the plea agreement.

{¶ 51} The trial court then reviewed the Crim.R. 11 notification and waiver form with Merrick. The court informed Merrick of the possible maximum sentence for each charged offense, including the prison sentence, fine, and post-release control obligation for the non-murder offenses. The court explained the consequences of violating post-release control. The court told Merrick that he was not eligible for consideration for community control if it followed the recommended sentence, that it was required to impose a mandatory prison sentence for the aggravated murders, and there was a presumption of prison for the aggravated burglaries. The trial court told Merrick that he would be unable to appeal his sentence if the court imposed the recommended sentence. The court specifically asked Merrick if he understood that one of the agreed sentences was a life sentence without parole; Merrick responded, "Yes."

{¶ 52} The court asked Merrick if he understood that a plea of guilty was a complete admission of guilt, to which Merrick responded affirmatively. Merrick indicated that he understood that the court could enter a judgment of guilt and proceed to sentencing. The court informed Merrick of the constitutional rights that he was waiving by entering his plea. Merrick stated that he understood his rights and was waiving them.

{¶ 53} The court again read to Merrick the charges to which he was pleading. Asked how he was pleading, Merrick responded, "Guilty." Merrick stated that he was entering his pleas knowingly, intelligently, and voluntarily. The court accepted Merrick's guilty pleas and found that they were made knowingly, intelligently, and voluntarily. The court further concluded that it had complied with the requirements of Crim.R. 11. The

transcript of the hearing supports the trial court's conclusions.

{¶ 54} In his pro se brief, Merrick claims that he was under duress "during the entire plea negotiations." He points to the video and transcript of the combined plea and sentencing hearing, stating that he paused before answering. At the sentencing hearing, which immediately followed the plea, Merrick stated as his allocution, "All my pauses indicated dot, dot, dot. Thank you." Merrick signed his plea forms with ellipses before his signature.

{¶ 55} Merrick states on appeal that the use of ellipses is a signal of duress. However, we can find nothing in Ohio or federal law that recognizes the use of ellipses preceding a signature as an indication that the signature was coerced. Moreover, Merrick's sworn oral statements to the trial court during the plea hearing belie his contention that he entered his plea under duress. Merrick expressly denied that he was coerced into entering his plea, he repeatedly told the court that he wished to enter his guilty pleas, and he stated that he was doing so knowingly, intelligently, and voluntarily.

{¶ 56} Merrick further claims that the State failed, as required by law, to disclose at the plea hearing that there were joint plea negotiations involving his brother, Bret, and that Merrick's plea agreement was made "to prevent the State from executing Mr. Merrick's brother as he was told in many words they would."[1]

{¶ 57} Crim.R. 11(F) provides:

When a negotiated plea of guilty or no contest to one or more offenses charged or to one or more other or lesser offenses is offered, the underlying

---

[1] Bret Merrick ultimately pled guilty to two counts of involuntary manslaughter and a firearm specification.

agreement upon which the plea is based shall be stated on the record in open court. To the extent required by Article I, Section 10a of the Ohio Constitution or by the Revised Code, before accepting the plea, the trial court shall allow an alleged victim of the crime to raise any objection to the terms of the plea agreement.

{¶ 58} The trial court read the parties' eight-page plea agreement into the record at Merrick's plea hearing. When asked at the plea hearing whether "anyone guaranteed you anything special or promised you anything special just to induce you to plead guilty today," Merrick responded, "Not beyond the terms of our agreements here." There is nothing in the record to support Merrick's claim that his plea was based on terms not included in the plea agreement and not expressed at the plea hearing. To the extent that Merrick's argument relies on evidence outside the record, his argument is not properly before us on direct appeal.

{¶ 59} With the record before us, any assignment of error alleging defects in the plea hearing would be frivolous.

**V. Sentencing**

{¶ 60} As stated above, Merrick was sentenced immediately following his plea, and the trial court imposed the sentence jointly recommended by the parties. As part his plea, Merrick agreed that he would not be able to appeal his sentence per R.C. 2953.08(D), because it was a stipulated sentence.

{¶ 61} Pursuant to R.C. 2953.08(D)(1), "[a] sentence imposed upon a defendant is not subject to review under this section if the sentence is authorized by law, has been recommended jointly by the defendant and the prosecution in the case, and is imposed

by a sentencing judge." "If all three conditions are met, the defendant may not appeal the sentence." *State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d 923, ¶ 16.

{¶ 62} We recently commented on the "authorized by law" portion of R.C. 2953.08(D)(1), stating:

> The "authorized by law" condition is a bit more nuanced, with a sentence being so authorized "only if it comports with all mandatory sentencing provisions." [*Underwood*] at paragraph two of the syllabus. Such mandatory provisions include the proper imposition of postrelease control (PRC), making, when applicable, the findings required for the imposition of consecutive sentences, and ordering the merger of allied offenses of similar import. *Id.* at ¶ 20, 33.

*State v. Smith*, 2d Dist. Montgomery No. 28208, 2020-Ohio-2854, ¶ 8.

{¶ 63} Our independent review confirms that Merrick's sentences were not appealable, because appellate review is precluded by R.C. 2953.08(D)(1). The parties jointly recommended sentences for each of Merrick's offenses, the sentences fell within the allowable sentences for those offenses, and the trial court imposed those sentences as recommended. The parties agreed that the murder charges merged with the aggravated murder charges, that the felonious assault charge merged with the aggravated murder charge regarding Brown, and that the remaining charges did not merge; the trial court did not impose a sentence on the merged offenses. The court correctly imposed consecutive three-year prison sentences for the two firearm specifications. The trial court properly imposed post-release control for the offenses

subject to post-release control, i.e., the non-murder offenses. Accordingly, each of the requirements of R.C. 2953.08(D)(1) was met. Merrick's sentences thus were not appealable under R.C. 2953.08(D)(1), and any appellate argument challenging Merrick's sentences would be wholly frivolous.

{¶ 64} We note that Merrick's appeal of his aggravated murder prison sentences would also be precluded by R.C. 2953.08(D)(3), which states that "[a] sentence imposed for aggravated murder or murder pursuant to sections 2929.02 to 2929.06 of the Revised Code is not subject to review under this section." Merrick pled guilty to two counts of aggravated murder, and he was sentenced to life in prison without parole, as allowed for in R.C. 2929.02 and R.C. 2929.03(A).

{¶ 65} Merrick raises on appeal that he should have been sentenced by a three-judge panel. Merrick argues that a three-judge panel is required for any case in which death penalty specifications were included. However, at the time of Merrick's sentencing, all of the death penalty specifications had been dismissed. Accordingly, Merrick had no right to be sentenced by a three-judge panel.

{¶ 66} We find no non-frivolous issues related to Merrick's sentencing.

{¶ 67} We note that the trial court's separate September 12, 2018 entry rendering judgment for court costs, which was filed on the same date as the judgment of conviction, is contrary to the court's oral pronouncement at sentencing and the court's written judgment of conviction entry, both of which indicated that court costs were waived. In light of the court's oral pronouncement waiving court costs, as agreed by the parties, and its sentencing entry waiving such costs, the court's separate order granting judgment for court costs appears to have been filed erroneously.

## VI. Conclusion

**{¶ 68}** We have examined the entire record and conducted our independent review in accordance with *Penson*, 488 U.S. 75, 109 S.Ct. 346, 102 L.Ed.2d 300.   We conclude that no non-frivolous issues exist for appeal from the trial court's September 12, 2018 judgment of conviction.   The trial court's judgment of conviction will be affirmed.   The trial court's separate order imposing court costs will be vacated.

. . . . . . . . . . . . .


DONOVAN, J. and HALL, J., concur.


Copies sent to:

Marcy A. Vonderwell
William Cass, Jr.
Dustin Merrick
Hon. Michael A. Buckwalter