[Cite as *State v. Moore*, 2021-Ohio-2128.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 28969 |
| | : | |
| v. | : | Trial Court Case No. 2018-CR-1292 |
| | : | |
| JOHNNIE LEE MOORE | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 25th day of June, 2021.

. . . . . . . . . . .

MATHIAS H. HECK, JR. by LISA M. LIGHT, Atty. Reg. No. 0097348, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, 5th Floor, Dayton, Ohio 45422
      Attorney for Plaintiff-Appellee

JOHNNIE LEE MOORE, #A768-256, P.O. Box 740, London, Ohio 43140
      Defendant-Appellant, Pro Se

. . . . . . . . . . . . .

EPLEY, J.

{¶ 1} Johnnie Lee Moore appeals from a judgment of the Montgomery County Court of Common Pleas, which denied his petition for postconviction relief without a hearing. For the following reasons, the trial court's judgment will be affirmed.

## I. Facts and Procedural History

{¶ 2} In December 2019, Moore was convicted of aggravated vehicular homicide, in violation of R.C. 2903.06(A)(1)(a) (proximate result of OVI). In his direct appeal, *State v. Moore*, 2d Dist. Montgomery No. 28640, 2021-Ohio-1114, we detailed the evidence from the suppression hearing relevant to Moore's blood sample, and we summarize it here.

{¶ 3} At approximately 7:14 p.m. on November 14, 2017, Moore was driving at a speed of approximately 120 mph when he collided with the rear of another vehicle, causing the death of the driver. His vehicle then crossed the center of the roadway, hit a third vehicle head-on, and ended up in an embankment. Moore was seriously injured.

{¶ 4} Responding medics extricated Moore from his vehicle and placed him an ambulance. Prior to his transport to the hospital, Officer Sherri Robinson checked on Moore's condition and noticed a moderate odor of alcohol emanating from him. The officer also learned from Moore's wife that Moore had been driving home from a bar. Based on the collision, the odor of alcohol, and the fact that Moore had left a bar, Robinson suspected that Moore had been driving under the influence of alcohol. She followed the ambulance to the hospital to seek Moore's consent for a blood sample.

{¶ 5} Robinson was unable to speak with Moore upon arrival at the hospital, because Moore was taken for CAT scans and emergency treatment; hospital staff later

informed Robinson that Moore had been sedated after his CAT scans due to his being uncooperative. At 9:34 p.m., Robinson apprised her supervisor, Sergeant Joseph McCrary, of the situation, and he told her that they needed to obtain a search warrant for a blood sample from Moore. McCrary drove to the police station to begin preparing a warrant. A search warrant ultimately was signed by a judge at 11:46 p.m. The warrant permitted the drawing of Moore's blood "any time day or night; as soon as possible (within 3 hours of operation of vehicle)."

{¶ 6} McCrary drove to the hospital with the signed warrant. While on the way, he called Robinson and told her to inform medical staff that there was a search warrant to obtain Moore's blood sample. McCrary arrived at the hospital at 12:05 a.m. and gave the search warrant to Robinson, who presented it to a phlebotomist. The phlebotomist then used a standard "DUI kit" to obtain Moore's blood sample. It is undisputed that there was an approximate five-hour delay in taking Moore's blood sample.

{¶ 7} On November 21, 2017, Brian Simons, a forensic toxicologist with the Miami Valley Regional Crime Lab (MVRCL), performed an initial screen of Moore's blood sample. The screen was positive for ethanol at a concentration of .114, plus or minus .011 gram per cent. One week later, on November 28, 2017, Simons used another approved testing method to perform a confirmation analysis. The confirmation analysis was positive for ethanol at a concentration of .117, plus or minus .011 gram per cent. All of the data, including Simons's data, was reviewed and used by forensic toxicologist Kialee Bowles to author a report. Pursuant to MVRCL's policy, the lower concentration of .114, plus or minus .011 gram per cent, was reported.

{¶ 8} On April 27, 2018, Moore was indicted on two counts of aggravated vehicular

homicide – one count in violation of R.C. 2903.06(A)(1)(a) (proximate result of OVI), a felony of the second degree, and the other count in violation of R.C. 2903.06(A)(2)(a) (recklessly), a felony of the third degree. Moore moved to suppress all evidence obtained by the police, including the blood test results. He contended that the State could not establish that his blood was drawn and tested pursuant to the requirements in R.C. 4511.19(D) and Chapter 3701-53 of the Ohio Administrative Code. In a supplemental motion to suppress filed on June 26, 2018, he raised three specific violations: (1) his blood was not drawn within three hours of the automobile accident, (2) his blood sample was not properly refrigerated, and (3) the chain of custody for the blood sample was not maintained. Moore also claimed that the untimely drawing of his blood was contrary to the search warrant and thus violated his Fourth Amendment rights.

{¶ 9} On June 28 and August 3, 2018, the trial court conducted hearings on Moore's motions to suppress related to the blood sample, during which it heard testimony from Robinson, McCrary, the phlebotomist, and Simons. The parties submitted post-hearing memoranda.

{¶ 10} On April 10, 2019, the trial court concluded that the approximate five-hour delay in taking Moore's blood did not require suppression. The court relied on *State v. Hassler*, 115 Ohio St.3d 322, 2007-Ohio-4947, 875 N.E.2d 46, which held that "[a] blood sample taken outside the time frame set out in R.C. 4511.19(D) is admissible to prove that a person is under the influence of alcohol as proscribed by R.C. 4511.19(A)(1)(a) in the prosecution for a violation of R.C. 2903.06, provided that the administrative requirements of R.C. 4511.19(D) are substantially complied with and expert testimony is offered." *Id.* at syllabus (blood sample drawn approximately seven hours after accident

was admissible).

{¶ 11} On May 23, 2019, the prosecutor sent an email to Matthew Juhascik of the MVRCL, stating:

> I have [an] Agg. Vehicular Homicide case that is set for trial in August. The defendant is accused of driving while intoxicated and striking and killing a lady (while she was driving) in Trotwood. Unfortunately, the police didn't get the search warrant until outside the 3 hour limit. We had a mts [motion to suppress] and the Court will allow the BAC [blood alcohol concentration] results to come into evidence but only if we have "expert" testimony to accompany it on how it would affect the body. Kialee Bowles did the testing on his blood. He had a 0.114 gm% bac. (her report dated 12-13-17)[.] I know you can't give specifics on how this level of alcohol would effect [sic] Johnnie Moore personally but would you be willing to do a report for us like you have in the past about generally what you would expect to see how alcohol effects [sic] the body at this limit. We would greatly appreciate it. *This defendant has already killed one person before this incident and we really need to get him off the streets.* Let me know if you need anything further. Thanks a lot.

(Emphasis added.) The same day, Juhascik replied that Bowles could provide an expert report, and that he would review the report before she issued it. Juhascik copied Bowles on his response to the prosecutor. The email response did not acknowledge the potentially offending language.

{¶ 12} On May 31, Bowles emailed a report and her curriculum vitae to the

prosecutor, who forwarded the email to defense counsel. The report, dated May 29, 2019, stated that she had been asked to describe "the possible effects of ethanol for a subject with a measured blood concentration of 0.114 gm%." Bowles reported that, "[f]or most people, there are states of ethanol's influence that they could be experiencing at a blood concentration of 0.114 gm%" – euphoria and excitement, which she described. The report did not address how alcohol would affect Moore personally.

{¶ 13} The matter then proceeded to a jury trial in November 2019, during which Bowles testified, among several other witnesses. Bowles described her education and experience in forensic toxicology, including the specific training she received regarding the effects of alcohol on the human body. She testified that she authored the report following her review of Simons's testing, and she described how .114 grams per milliliter of alcohol affects the average person. Bowles acknowledged that she could not offer specifics about how that level of alcohol may have affected Moore on November 14, 2017. Defense counsel's cross-examination of Bowles emphasized that she did not know whether Moore was impaired on November 14, 2017, and that alcohol could have different effects depending on individual's specific physical characteristics. On redirect examination, Bowles expanded on her assessment that she would not have expected Moore's BAC to be lower if his blood had been drawn earlier.

{¶ 14} After deliberations, the jury found Moore guilty of both counts of aggravated vehicular homicide. On December 12, 2019, the court merged the offenses and sentenced Moore to a mandatory eight years in prison, suspended his driver's license for life, and ordered him to pay restitution of $4,337.07 and court costs. Moore appealed from his conviction, challenging the trial court's ruling on his motion to suppress. We

recently held that the trial court did not err in overruling the motion to suppress and affirmed the trial court's judgment. *Moore*, 2d Dist. Montgomery No. 28640, 2021-Ohio-1114.

{¶ 15} On October 1, 2020, while his direct appeal was pending, Moore filed a petition for postconviction relief. Moore initially stated that his trial counsel acted deficiently by failing to notify him of exculpatory evidence. In his supporting memorandum, Moore asserted that the May 2019 email messages between the prosecutor and MVRCL "show collusion by these two parties to withhold important facts from the jury to my prejudice." Moore asserted that the prosecutor's May 23 email inaccurately suggested to the crime lab that he was a "serial DUI killer" whom MVRCL needed to help "get off the streets." Moore emphasized that the prosecutor committed a "serious sin of omission," noting that the prior death involved neither an OVI, alcohol, nor a vehicle.

{¶ 16} Moore's petition further contended that the resultant MVRCL report and blood test results were skewed in the State's favor as a result, noting that the report did not acknowledge other reasons why his BAC results may have been high and the report provided "only a generalized evaluation as to how this BAC might have affected some imaginary person." Moore argued that "[d]ue process of law assumes that a trial is free from any malfeasant act by any court officers," and he claimed that the alleged conspiracy between the prosecutor and MVRCL deprived him of due process.

{¶ 17} Four days after Moore filed his petition, the State moved for summary judgment, asserting that all of Moore's claims were barred by res judicata. The State further asserted that Moore had provided "no affidavits or new evidence" to support his

claim of collusion.

{¶ 18} On October 26, 2020, the trial court overruled Moore's petition without a hearing. Viewing Moore's claim as one of ineffective assistance of trial counsel, the court found that Moore could have raised his claim on direct appeal and, therefore, his claim was barred by res judicata. Alternatively, the court found that, even if res judicata did not apply, Moore's argument was "utterly without merit." The court reasoned:

First, Mr. Moore's trial counsel cross examined the MVRCL forensic toxicologist, Kialee Bowles ("Ms. Bowles"), at trial. It would have been highly prejudicial to Mr. Moore had his trial attorney suggested to the jury that he had killed someone before in an attempt to somehow prove, somehow, that Ms. Bowles was biased against him. Further, Ms. Bowles admitted at trial that she did not know the exact effects of ethanol on Mr. Moore and was only testifying about the effects of ethanol on people generally. The prosecutor's subject e-mail is hardly exculpatory evidence or, frankly, evidence of anything. It certainly does not even suggest collusion between the State and Ms. Bowles, nor illustrate ineffective assistance of trial counsel

{¶ 19} Moore appeals from the trial court's judgment, claiming that the trial court erred in overruling his petition for postconviction relief without a hearing.

## II. Standard of Review for Petition for Postconviction Relief

{¶ 20} Under the postconviction relief statutes, any defendant who has been convicted of a criminal offense and who claims to have experienced a denial or infringement of his or her constitutional rights (federal or Ohio) may petition the trial court

to vacate or set aside the judgment and sentence. R.C. 2953.21(A); *e.g., State v. Martin*, 2d Dist. Montgomery No. 27844, 2018-Ohio-3505, ¶ 9. A petition for postconviction relief "is a means by which the petitioner may present constitutional issues to the court that would otherwise be impossible to review because the evidence supporting those issues is not contained in the record of the petitioner's criminal conviction." *State v. Clark*, 2017-Ohio-120, 80 N.E.3d 1251, ¶ 14 (2d Dist.), quoting *State v. Monroe*, 2015-Ohio-844, 29 N.E.3d 391, ¶ 37 (10th Dist.). A postconviction proceeding is a "civil collateral attack on a criminal judgment," not an appeal from the criminal conviction. *State v. Wells*, 2d Dist. Montgomery No. 22389, 2008-Ohio-4932, ¶ 11, citing *State v. Calhoun*, 86 Ohio St.3d 279, 281, 714 N.E.2d 905 (1999).

{¶ 21} R.C. 2953.21(D) provides that, before granting a hearing on a petition for postconviction relief, the trial court shall determine whether there are substantive grounds for relief. The petitioner bears the initial burden of submitting evidentiary documents with sufficient facts to demonstrate a constitutional deprivation, such as ineffective assistance of counsel, that would merit a hearing. *State v. Jackson*, 64 Ohio St.2d 107, 111, 413 N.E.2d 819 (1980), syllabus; *Martin* at ¶ 10. Broad conclusory allegations are insufficient, as a matter of law, to require a hearing. *Id.* A petition for postconviction relief may be properly denied without a hearing where the petition, its supporting evidence, and the record "do not demonstrate that petitioner set forth sufficient operative facts to establish substantive grounds for relief." *Calhoun* at paragraph two of the syllabus; *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, ¶ 51; *State v. Sellars*, 2d Dist. Montgomery No. 28860, 2021-Ohio-1433, ¶ 13.

{¶ 22} We review a trial court's denial of a petition for postconviction relief without

a hearing for an abuse of discretion. *State v. Clemmons*, 2d Dist. Montgomery No. 28085, 2019-Ohio-2997, ¶ 18; *State v. Harden*, 2d Dist. Montgomery 23617, 2010-Ohio-3343, ¶ 10. An abuse of discretion occurs when the trial court's decision is unreasonable, arbitrary, or unconscionable. *State v. Turner*, 2d Dist. Montgomery No. 27350, 2017-Ohio-4101, ¶ 5, citing *State v. Jenkins*, 2d Dist. Montgomery No. 27173, 2017-Ohio-1073, ¶ 10.

### III. Review of the Trial Court's Denial of Moore's Petition

{¶ 23} Moore's petition for postconviction relief raised claims of ineffective assistance of counsel and a denial of due process. He primarily claimed a due process violation due to "collusion" between the prosecutor and the crime lab, and he asserted that Bowles's supplemental report improperly focused on an "imaginary" person with his BAC result, not whether he was intoxicated. He further claimed that his counsel rendered ineffective assistance by failing to notify him of this "exculpatory evidence."

{¶ 24} The State asserts that Moore's claims are barred by res judicata, as found by the trial court. " 'Res judicata' means that a final decision has previously been made; it serves to preclude a party who had his or her day in court from seeking a second hearing on the same issue." *Martin* at ¶ 12, citing *State v. Saxon*, 109 Ohio St.3d 176, 2006-Ohio-1245, 846 N.E.2d 824, ¶ 18. Under the doctrine of res judicata, "any issue that could have been raised on direct appeal," but was not, is "not subject to review in subsequent proceedings." *Saxon* at ¶ 16.

{¶ 25} The State focuses on the fact that the admissibility of the blood sample results was a central issue raised in the trial court. Moore had sought to suppress the blood sample evidence in a multi-faceted motion to suppress, and the denial of his motion

to suppress was the focus of his direct appeal. The State emphasizes that the parties and the trial court knew that the blood draw occurred outside of the three-hour time window. The State contends that "Moore's argument must be barred by res judicata, as he had this information at the time of the motion to suppress, the time of trial, and could have, and did argue it, on direct appeal."

{¶ 26} It is clear, as the State asserts, that Moore was aware of the untimeliness of the blood draw, and his counsel had received both Simons's blood test results and Bowles's report and supplemental report prior to trial. To the limited extent that Moore asserts that Bowles should not have been able to testify about how an average person (as opposed to Moore himself) would be affected with a BAC of .114, as a matter of law, that claim is barred by res judicata. Moore could have objected to that testimony at trial and challenged the admission of that testimony on direct appeal. Accordingly, this argument is barred by res judicata.

{¶ 27} Moore's petition for postconviction relief, however, focused mainly on the May 23, 2019 email between the prosecutor and MVRCL and Bowles's May 29, 2019 supplemental report, which he asserts demonstrates "collusion" between the State and MVRCL to ensure the admissibility of the blood sample evidence and his eventual conviction. (Collusion has been defined as a "secret agreement or cooperation especially for an illegal or deceitful purpose." https://www.merriam-webster.com/dictionary/collusion). The pivotal question is whether Moore could have raised *this* argument on direct appeal.

{¶ 28} It is well established that when a claim relies upon information outside the record, the issue cannot be addressed on direct appeal. *See, e.g., State v. Lawson*,

2020-Ohio-6852, 164 N.E.3d 1130, ¶ 106 (where a claim of lack of communication between a defendant and trial counsel relies upon evidence outside of the record, it is "not an issue we can review on direct appeal"); *State v. Merrick*, 2d Dist. Greene No. 2019-CA-29, 2020-Ohio-3744, ¶ 25 (defendant's claim regarding his attorney's conduct "relies on matters outside the record and, consequently, is not properly raised on direct appeal").

{¶ 29} Here, it is unclear when defense counsel received a copy of the prosecutor's May 23, 2019 email.   Regardless, even assuming that defense counsel received it during the pendency of Moore's case, that email was not in the record on direct appeal.   It was not used for cross-examination or otherwise mentioned at trial.   Had Moore attempted to raise a due process/collusion claim on direct appeal, we would have been compelled to hold that such a claim was not cognizable on direct appeal as it relied on evidence outside the record.   Accordingly, Moore's due process/collusion claim based on the May 23, 2019 email is not barred by res judicata.

{¶ 30} Turning to the merits of Moore's petition, the trial court focused on Moore's claim of ineffective assistance of trial counsel.   In its appellate brief, the State similarly discussed defense counsel's actions at trial.   The State contends that Moore's trial counsel reasonably failed to cross-examine Bowles with the May 23 email, arguing that "[i]t would have been highly prejudicial to Moore had his trial attorney suggest[ed] to the jury that Moore killed someone before to prove that the forensic toxicologist was prejudiced against him."   The State emphasizes that the toxicologist admitted that she did not know the effects of alcohol on Moore personally, and that she was only testifying about the general effects of alcohol on the average person.

{¶ 31} We agree that evidence of Moore's involvement in a prior death would have been prejudicial to Moore, and counsel reasonably avoided making the jury aware of that prior conduct.   To the extent that Moore's petition for postconviction relief claims that his counsel rendered ineffective assistance at trial, the trial court reasonably concluded that defense counsel employed a reasonable trial strategy, which we will not second-guess. Moreover, to the extent that Moore argues that his counsel failed to make him aware of the email, we agree that the email was not exculpatory and that there is no evidence that counsel failed to make him aware of the email prior to trial.

{¶ 32} Moore's petition primarily concerned "newly discovered evidence that reveals a conspiracy by the Montgomery County Prosecutor's Office and the Miami Valley Regional Crime Laboratory (MVRCL) to hide from this Court the facts of how testing my blood for alcohol content after more than 4.5 hours after this incident in question took place ma[y] be inaccurate, and, hence, is barred by O.R.C. 4511.19."   He expressly stated that this "conspiracy" deprived him of due process of law.   In short, Moore contended that the State improperly influenced the forensic toxicologist to produce a report that was more favorable to the State's position than it otherwise would have been.

{¶ 33} Moore had the initial burden of submitting evidentiary documents with sufficient facts to demonstrate a constitutional deprivation (in this case, the denial of due process) that would merit a hearing.   Moore's "new evidence" took the form of the May 2019 emails between the prosecutor and MVRCL.

{¶ 34} Upon review of the May 2019 emails between the prosecutor and the crime lab, we cannot conclude that the trial court abused its discretion in denying Moore's petition without a hearing.   While Moore asserts that the prosecutor's statements in the

May 23 email biased the crime lab against him and encouraged the crime lab to help get him "off the street," there is nothing in the record to support that the prosecutor intended or even realized that his email could be interpreted in this manner or that MVRCL personnel interpreted the May 23 as such a request. The email reflects that the prosecutor had asked for similar expert reports in the past, and the crime lab's email response demonstrated that Bowles could provide a supplemental report. There was no indication in the crime lab's response that the lab personnel interpreted the prosecutor's statements as anything other than an expression of the importance of receiving a supplemental report for trial.

{¶ 35} Moreover, nothing in the record suggests that Bowles's May 29, 2019 report and her subsequent testimony was influenced, in any respect, by the statements regarding Moore in the prosecutor's May 23 email. Bowles's report provided scientific evidence about the effect of a particular blood alcohol concentration on an average person, and Moore provided no evidence to suggest that her report and testimony were scientifically inaccurate. Because Bowles had no contact with Moore and was not provided information from which she could have potentially estimated the effect of a .114 gram per cent BAC on Moore personally, we find nothing to suggest that Bowles's reference to the effects on an average person was the result of collusion or otherwise improper.

{¶ 36} Moore's assignment of error is overruled.

### IV. Conclusion

{¶ 37} The trial court did not error in denying Moore's petition for postconviction relief without a hearing. The trial court's judgment will be affirmed.

. . . . . . . . . . . . .

TUCKER, P. J. and WELBAUM, J., concur.


Copies sent to:

Mathias H. Heck, Jr.
Lisa M. Light
Johnnie Lee Moore
Hon. Steven K. Dankof